Argued April 12, affirmed June 13, 1962

## JENSEN *v.* GLADDEN

372 P. 2d 183

*Ralph W. G. Wyckoff,* Salem, argued the cause and submitted a brief for appellant.

*Harold W. Adams,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief was Robert Y. Thornton, Attorney General.

Before McAllister, Chief Justice, and Warner, Sloan and O'Connell, Justices.

O'CONNELL, J.

This is a post-conviction proceeding brought under ORS 138.500 et seq. Defendant demurred to plaintiff's petition. The demurrer was sustained and judgment was entered for defendant. Plaintiff appeals.

The petition discloses that petitioner was first convicted of the crime of contributing to the delinquency of a minor (ORS 167.210) and was sentenced to the penitentiary. About two years later, while on parole, he was convicted of the crime of indecent exposure and received a sentence of not more than six months in the county jail.[1] Approximately six weeks later the six-month sentence was vacated and petitioner was sen-

---

[1] ORS 167.145 provides:

"Any person who wilfully and lewdly exposes his person or the private parts thereof in any public place, or in any place where there are present other persons to be offended or annoyed thereby, or takes any part in any model artist exhibition, or makes any other exhibition of himself to public view, or to the view of any number of persons, which is offensive to decency, or is adapted to excite vicious or lewd thoughts or acts, shall be punished upon conviction by imprisonment in the county jail for not less than three months nor more than one year, or by a fine of not less than $50 nor more than $500."

tenced to the penitentiary for an indeterminate period not to exceed his natural life. The latter sentence was imposed under ORS 167.050, which provides:

> "Violation of ORS 163.210, 163.220, 163.270, 167.035, 167.040, 167.045, 167.145, 167.165 or 167.210, by any person who has previously been convicted of a violation of any one, or more than one, of those sections, is punishable, upon conviction, by imprisonment in the state penitentiary for an indeterminate term not exceeding the natural life of such person."

Petitioner having violated ORS 167.210 and thereafter ORS 167.145 was subject to the provisions of ORS 167.050.[2]

■ Petitioner first contends that the equal protection clauses of the Fourteenth Amendment, United States Constitution, and Article I, § 20, Oregon Constitution, are violated, relying upon *State v. Pirkey,* 203 Or 697, 281 P2d 698 (1955) and *State v. Cory,* 204 Or 235, 282 P2d 1054 (1955). It is argued that upon similar facts the district attorney has the uncontrolled discretion to prosecute one man in the district court for a misdemeanor under ORS 167.145 or to prosecute another man for a felony under ORS 167.050. The basic assumption of this argument is erroneous. The defendant, having been previously convicted of one of the crimes referred to in ORS 167.050, was guilty of a felony, not a misdemeanor, when he thereafter committed the act proscribed by ORS 167.145. In *State v. Waterhouse,* 209 Or 424, 307 P2d 327 (1957) we held

---

[2] State v. Waterhouse, 209 Or 424, 307 P2d 327 (1957) holds that in proceeding under ORS 167.050 the indictment or information must allege the prior conviction and that this allegation must be proved in the trial to the jury.

In the present case, since no question was raised as to the regularity of the proceeding under ORS 167.050 other than as to the validity of the sentence, we assume that the proceedings complied with the statute.

that the commission of one of the offenses referred to in ORS 167.050 by one who had been previously convicted of one of those offenses constituted a distinct crime and that the crime was a felony. The crime charged in this case being a felony and not a misdemeanor, the circuit court had exclusive jurisdiction of the case and the district attorney would not have the option to prosecute in the district court for the commission of a misdemeanor. *State v. Pirkey,* supra, is, therefore, not applicable.

The petitioner further contends that the sentence imposed is in violation of Article I, § 16, which provides that "cruel and unusual punishments shall not be inflicted, but all penalties shall be proportional to the offense." Apparently it is conceded that ORS 167.050 is not itself subject to attack on constitutional grounds; the attack is made on the imposition of the sentence, it being argued that the crime of indecent exposure, even when coupled with the previous crime of contributing to the delinquency of a minor is not of such a grievous nature as to warrant the imposition of a sentence which could result in defendant's imprisonment for life.

Viewing ORS 167.050 simply as a statute designed to provide for enhanced punishment for recidivists, we would be called upon to decide whether, under the circumstances presented in the instant case, an indeterminate sentence with a maximum of life imprisonment, would necessarily be so disproportionate to the offense that it would "shock the moral sense of all reasonable men as to what is right and proper under the circumstances." *State v. Teague,* 215 Or 609, 611, 336 P2d 338 (1959), quoting from *Sustar v. County Court of Marion County,* 101 Or 657, 665, 201 P 445 (1921). Whether it would so shock the moral sense would, of

course, depend upon the seriousness of repetitive sexual conduct of this kind and the danger that it forecasts for others unless the defendant is segregated from society. Unfortunately, we know little about the causes and cures of sex crimes. Guttmacher and Weihofen, writing in 1952, state in Psychiatry and the Law, p. 110 that "Today no area in legal psychiatry is in such a state of ferment as that concerned with the problem of sex offenses. And there is doubtless no subject on which one can obtain more definite opinions and less definite knowledge."

■■ The view is held by some that sex offenders tend to progress from minor to major crimes. And there is a belief that all sex offenders tend to be recidivists. It is not unlikely that the legislature in enacting ORS 167.050 had these or similar considerations in mind and although the views noted above are criticized as not being founded upon fact,[9] we cannot say that there was not a reasonable basis for the enactment of

---

[9] See for example, Guttmacher and Weihofen, Psychiatry and the Law (1952) p. 111:

"* * * it is believed that sex offenders regularly progress from minor offenses such as exhibitionism to major offenses like forced rape. Such a graduation is almost unknown. The exhibitionist is acting out an intrapsychic conflict. He has adopted this method of relieving an intolerable state of anxiety and tension. Paradoxically, this has worked satisfactorily for him and he could not be induced to try a substitute."

It is further noted (pp. 111-112) that another "major source of error is the belief that all sex offenders tend to be recidivists." See also, Donnelly, Goldstein & Schwartz, Criminal Law (1962) p. 244 quoting from California Sexual Deviation Research, Final Report, XX (1954) p. 63. But cf., Donnelly, Goldstein & Schwartz, op. cit. supra at p. 246, quoting from Ellis & Brancale, "The Psychology of Sex Offenders" (1956) pp. 26, 33-37, "it would appear that repeated sex offenses are more the rule than the exception in the cases of those convicted of non-coital sex relations with a minor, exhibitory acts, and homosexual relations; while previous non-sex offenses tend to be committed by those convicted of sexual assault, forcible rape, statutory rape, and non-coital sex relations with a minor."

the punishment provision in ORS 167.050. It is the province of the legislature to establish the penalties for the violation of the various criminal statutes and if the penalties are founded upon an arguably rational basis we have no authority to hold that they are invalid.[4]

It may be noted in passing that the sentence provided for in ORS 167.050 was probably enacted as a part of a statutory scheme designed to provide a more effective rehabilitation program for sex law offenders. In the same Act which contained ORS 167.050 the legislature enacted what is now compiled as ORS 144.228 requiring a periodic review of the files of those persons convicted under ORS 167.050.[5] Undoubtedly this legislation was influenced by the movement then under way which proposed that sex law offenders be incarcerated for an indeterminate time so as to meas-

---

[4] The authority of the legislature to prescribe the penalty in ORS 167.050 was impliedly recognized in State v. Waterhouse, 209 Or 424, 439, 307 P2d 327, 334 (1957):

"By the terms of the statute here dealt with a person twice convicted of violations of what is known as a 'peeping Tom' statute—a misdemeanor—, or a person twice convicted of violations of ORS 167.145, relating to indecent exposure,— likewise a misdemeanor—, is liable to be punished by life imprisonment. Consideration of the extreme severity of the penalty in its relation to the gravity of such offenses may suggest to the legislative assembly the advisability of ameliorating amendments. We make this observation with full realization of the difficulty society experiences in attempting to cope with the evil aimed at by the statute."

[5] "144.228 (1) Within six months after conviction and at least once every two years thereafter during the term of any person sentenced under ORS 137.111 or 167.050 to an indeterminate term not exceeding his natural life, the State Board of Parole and Probation shall cause to be brought before it and consider all information regarding such person. The information shall include the written report of the examining psychiatrist which shall contain all the facts necessary to assist the State Board of Parole and Probation in making its determination. The report of the examining psychiatrist shall be made within two months of the date of its consideration."

ure their imprisonment in accordance with the time that it was necessary to effect psychiatric rehabilitation.[9]

■ The punishment called for by ORS 167.050, and as applied in the instant case, did not violate either Article I, § 16 or Article I, § 20.

The judgment of the lower court is affirmed.

---

[9] See for example the early recommendation made by Glueck, Mental Examination of Criminals, 8 Mental Hygiene 1, 15-16 (1924):

"In all such cases and in most of the cases of defective offenders the best of laws can do but little until society, through its machinery for legal regulation of the social order, decides to take the radical step of incarcerating such unstable offenders for a wholly indeterminate period, its actual length to depend not upon the wishes of the trial judge—who has had little opportunity, if any, to study the offender and his development under penal and correctional treatment—but on the judgment of highly trained prison officials who can study the behavior of the offender over a long period of time and who are logically the ones to say when such offenders can reasonably be expected to make good in society." 43 J Crim L 162-63 (1952).