Argued and submitted January 4, decision of the Court of Appeals affirmed on different grounds; judgment of the circuit court vacated, and case remanded to the circuit court for further proceedings May 9, 1996

JESS A. BILLINGS,
*Respondent on Review,*

*v.*

Edward L. GATES,
Superintendent,
Snake River Correctional Institution,
*Petitioner on Review.*

(CC 94-02-26238M; CA A83424; SC S42241)

916 P2d 291

Philip Schradle, Assistant Attorney General, Salem, argued the cause for petitioner on review. With him on the brief were Theodore R. Kulongoski, Attorney General, Virginia L. Linder, Solicitor General, and Kristin N. Preston, Assistant Attorney General, Salem.

Garrett A. Richardson, Multnomah Defenders, Inc., Portland, argued the cause and filed the brief for respondent on review.

VAN HOOMISSEN, J.

Fadeley, J., specially concurred and filed an opinion.

## VAN HOOMISSEN, J.

This is a habeas corpus proceeding. *See* ORS 34.310 *et seq* (describing habeas corpus procedures). The trial court denied plaintiff's petition as meritless. The Court of Appeals reversed. *Billings v. Gates*, 133 Or App 236, 244, 890 P2d 995 (1995). The sole issue presented is the correct standard under Article I, section 16, of the Oregon Constitution,[1] for testing this petition for habeas corpus. We affirm the decision of the Court of Appeals, but on different grounds.

Plaintiff Billings, an inmate at Snake River Correctional Institution (SRCI), petitioned for a writ of habeas corpus, alleging that defendant Gates, the superintendent of SRCI, had denied him proper medical treatment.[2] Plaintiff's petition alleged in part:

> "The shoes the institution has [have] no arch supports, and [plaintiff] has attempted to address this problem, because any walking causes the [plaintiff] pain to the point where he cannot walk. When the Doctor did see the [plaintiff], he told him that he has high arches, will have to buy arch supports off of the commissary, that SRCI will not provide arch supports, even where the [plaintiff] is indigent and unable to pay for arch supports for his bad feet. Thus, denying the [plaintiff] proper medical treatment."

Plaintiff did not cite any authority in support of his claim. The trial court ordered defendant to show cause why the writ should not be allowed.[3]

---

[1] Article I, section 16, of the Oregon Constitution, provides in part:

"Cruel and unusual punishments shall not be inflicted[.]"

[2] ORS 34.362 provides in part:

"If the person is imprisoned or restrained by virtue of any order, judgment, decree or process specified in ORS 34.330 and the person challenges the conditions of confinement or complains of a deprivation of rights while confined, the petition shall:

"* * * * *

"(2) State facts in support of a claim that the person is deprived of a constitutional right that requires immediate judicial attention and for which no other timely remedy is practicably available to the plaintiff."

[3] ORS 34.370(1) provides in part:

"[T]he judge to whom the petition for a writ of habeas corpus is presented shall, without delay, issue an order directing the defendant to show cause why the writ should not be allowed."

■■ Defendant's response alleged that plaintiff is being provided "constitutionally adequate" medical care and asked that his petition be denied on the ground that it failed to state a claim for habeas corpus relief.[4] In a legal memorandum submitted with his response, defendant argued that the standard of care recognized in *Estelle v. Gamble*, 429 US 97, 97 S Ct 285, 50 L Ed 2d 251, *reh'g den* 429 US 1066 (1976),[5] under the Eighth Amendment to the United States Constitution,[6] should be followed under Article I, section 16, of the Oregon Constitution. Defendant also asserted that, if the *Estelle* standard were applied, plaintiff could not prevail.

Relying on defendant's response and on factual materials attached to that response by defendant, the trial court entered this judgment:

"Plaintiff suffers from Pes Cavus, an exaggeration of the normal arch of the foot. Plaintiff received a Physician's Order on December 27th, 1993, allowing him to purchase arch supports with his own funds. Obviously, Plaintiff and

---

Notwithstanding ORS 34.370(1), the trial court may, on its own motion, enter a judgment denying a meritless petition. ORS 34.370(6). A meritless petition is one that, when liberally construed, fails to state a claim upon which habeas corpus relief may be granted. ORS 34.370(7).

[4] ORS 34.680(1) provides in part:

"The defendant may, before the writ issues, move to deny the petition on the grounds that the petition fails to state a claim for habeas corpus relief."

[5] In *Estelle*, the Supreme Court held that to establish a valid claim for cruel and unusual punishment in violation of the Eighth Amendment, "[a] prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106.

*Estelle* was the first occasion on which the United States Supreme Court acknowledged that the Eighth Amendment's cruel and unusual punishments clause could be applied to some deprivations that were not specifically part of a prisoner's sentence, but were suffered during imprisonment. *See Wilson v. Seiter*, 501 US 294, 297, 111 S Ct 2321, 115 L Ed 2d 271 (1991) (so stating). *See generally*, Carl T. Drechsler, Annotation, *Relief Under Federal Civil Rights Acts To State Prisoners Complaining of Denial of Medical Care*, 28 ALR Fed 279 (1976) (analyzing federal cases involving civil actions brought under 42 USC §§ 1983 *et seq*, dealing with the question whether and under what circumstances relief may be available to state prisoners complaining of denial by prison officials of medical care).

[6] The Eighth Amendment to the United States Constitution provides:

"Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

The Eighth Amendment is made applicable to the states by the Fourteenth Amendment. *Robinson v. California*, 370 US 660, 667, 82 S Ct 1417, 8 L Ed 2d 758 (1962).

the Institution's Health Services Unit differ with respect to whether the arch supports are medically necessary.

"To prevail on this type of claim, Plaintiff must show that the Defendant was deliberately indifferent to his serious medical need. A difference of opinion as to whether the arch supports are 'medically necessary' does not establish deliberate indifference. Plaintiff chooses not to use any of the funds placed in his account for arch supports. Such is his right. Plaintiff cannot, however, in turn force [defendant] to pay for his arch supports under the circumstances found in this case. OAR 291-124-085(2) is not Constitutionally void on its face nor do the circumstances in this case involve a deprivation of a Constitutional right requiring immediate judicial attention. ORS 34.362.

"NOW THEREFORE, PLAINTIFF'S PETITION IS MERITLESS IN THAT THE RELIEF HE SEEKS IS NOT AVAILABLE UNDER A HABEAS CORPUS PROCEEDING. NOW THERE [sic], IT IS HEREBY ORDERED THAT PLAINTIFF'S PETITION BE, AND IT IS HEREBY, DISMISSED.

"IT IS FURTHER ORDERED THAT JUDGMENT BE, AND IT IS HEREBY, GIVEN IN FAVOR OF DEFENDANT. ORS 34.370(2)(b)(A)."[7]

In denying the petition, the trial court did not specify whether it was applying a state or federal constitutional standard, assuming that the two are different. However, from the text and context of the trial court's ruling, it is apparent that the court based its decision on a conclusion that plaintiff's petition did not meet either standard, state or federal. Plaintiff appealed. ORS 34.710. On appeal, plaintiff

---

[7] ORS 34.370(2)(b)(A) provides in part:

"Upon the issuance of a show cause order under subsection (1) of this section, the following shall apply:

"* * * * *

"(b) The judge shall rule on the show cause order within seven days after either the defendant files a written appearance in opposition or the appearance period expires, whichever comes first. Upon making a ruling, the judge shall do one of the following, as appropriate:

"(A) If the petition is a meritless petition, issue a judgment denying the petition * * *."

Entry of a judgment under ORS 34.370(2)(b)(A) is "without prejudice." ORS 34.370(3).

relied exclusively on Article I, section 16, of the Oregon Constitution.

The Court of Appeals first concluded that a summary ruling on a show cause order issued pursuant to ORS 34.370(1) and (2) must be made on the basis of the sufficiency of the habeas corpus pleadings alone. The court held that the trial court's consideration of the factual materials attached to defendant's response was error. *Billings*, 133 Or App at 239-41. Defendant does not seek review of that holding, and ·we do not address it. The court also held that plaintiff's petition adequately pleads that his claim requires immediate judicial attention and that no other timely remedy is practicably available to him. Defendant does not seek review of that holding, and we do not address it.

The Court of Appeals then reversed, reaffirming its holding in *Priest v. Cupp*, 24 Or App 429, 545 P2d 917, *rev den* (1976), that under Article I, section 16, prison inmates must

" 'be afforded such medical care in the form of diagnosis and treatment as is reasonably available under the circumstances of [their] confinement.' 24 Or App at 431." *Billings*, 133 Or App at 241.

The court concluded that, under a "reasonably available" standard, plaintiff's petition stated a sufficient claim for habeas corpus relief. *Id*. at 243. We allowed defendant's petition for review to consider whether the Court of Appeals applied the correct standard under Article I, section 16—an issue of first impression for this court.

Defendant argues that this court should adopt the same standard under Article I, section 16, that the United States Supreme Court recognized for an Eighth Amendment violation in *Estelle*. Plaintiff responds that *Estelle's* "deliberate indifference" standard results in convoluted and costly inquiries into the subjective intentions of prison officials. Plaintiff also argues that the Court of Appeals' "reasonably available" standard correctly focuses on the seriousness of plaintiff's medical condition and on the availability and reasonableness of potential treatment, given the conditions of his confinement.

■ Article I, section 16, closely parallels the Eighth Amendment. In interpreting a provision of the Oregon Constitution, however, this court is not bound by an interpretation of the United States Supreme Court relating to a parallel provision of the federal constitution. *State ex rel Juv. Dept. v. Rogers*, 314 Or 114, 118, 836 P2d 127 (1992).

■ In considering state law claims, particularly claims of first impression, this court has expressed a preference for principled arguments as opposed to mere citations from other jurisdictions. *State v. Kennedy*, 295 Or 260, 266-67, 666 P2d 1316 (1983). Litigants are expected to scrutinize and expound on state constitutional provisions. *Id.; see also Dept. of Trans. v. Lundberg*, 312 Or 568, 572 n 4, 825 P2d 641, *cert den* 113 S Ct 467 (1992) (because the defendants did not suggest any different analysis under the Oregon Constitution than under the United States Constitution, court would assume for purposes of the case, without deciding, that the analysis would be the same under the state constitution); *State v. Mendez*, 308 Or 9, 19, 774 P2d 1082 (1989) (refusing to consider a state constitutional claim when the party failed to raise any constitutional argument in the trial court and also failed to brief or argue any independent state constitutional theory on appeal).

In determining the proper standard of medical care that Oregon prison officials owe inmates under Article I, section 16, we address three aspects of that provision: its specific wording, the case law surrounding it, and the historical circumstances that led to its creation. *See Priest v. Pearce*, 314 Or 411, 415-16, 840 P2d 65 (1992) (stating method of analysis in interpreting Article I, section 14).

## TEXT AND CONTEXT

Although the framers of the Oregon Constitution did not express what they meant by "cruel and unusual punishments,"[8] that phrase appearing in the federal and early state

---

[8] *See* David Schuman, *The Creation of the Oregon Constitution*, 74 Or L Rev 611, 625-34 (1995) (no record of any debate concerning cruel and unusual punishments clause during 1857 Constitution Convention); *see also* 2 Criminal Law § 27.2 (Oregon CLE 1994) (History of the Writ).

constitutions was commonly understood to proscribe "tortures" and other "barbarous" methods of punishment. *Estelle*, 429 US at 102. *See Gregg v. Georgia*, 428 US 153, 169-73, 96 S Ct 2909, 49 L Ed 2d 859 (1976) (joint opinion of Stewart, Powell, and Stevens, JJ.) (announcing the judgment of the Court and discussing history of "cruel and unusual punishments" clause); *see also* Anthony F. Granucci, *"Nor Cruel and Unusual Punishments Inflicted": The Original Meaning*, 57 Ca L Rev 839, 842 (1969). Early Supreme Court decisions have concluded that punishments were cruel and unusual when they involved "torture or a lingering death." *In re Kemmler*, 136 US 436, 447, 10 S Ct 930, 34 L Ed 519 (1890) (citing *Wilkerson v. Utah*, 99 US 130, 136, 25 L Ed 345 (1878)). Alternatively, a punishment would be cruel and unusual and, thus, unlawful, if it was "so manifestly out of all proportion to the offence as to shock the moral sense with its barbarity, or because it is a punishment long disused for its cruelty until it has become unusual." *Bouvier's Law Dictionary*, Vol. 2, 796 (1897 ed) (citing Cooley, *Constitutional Limitations*, 401-03). Cf. *Theatre West of Lincoln City, Ltd. v. Dept. of Rev.*, 319 Or 114, 119, 873 P2d 1083 (1994) (examining early dictionaries in seeking meaning of statute). "Cruel" also suggests a high degree of pain or suffering. *Cf. State v. Cornell/Pinnell*, 304 Or 27, 32, 741 P2d 501 (1987) (the word "torture" connotes that the infliction of pain is a reason for the defendant's intentional act).

■ Throughout the nineteenth century, state and federal courts interpreted cruel and unusual punishments clauses narrowly and generally prohibited only physically torturous punishments ordered by sentencing judges. For the first half of the twentieth century, claims under Article I, section 16, focused on the duration of the sentence imposed, rather than on the conditions of confinement or alleged deprivations of other constitutional rights.[9] Federal courts also

_____

[9] *See, e.g., Jensen v. Gladden*, 231 Or 141, 372 P2d 183 (1962) (life sentence did not violate Article I, section 16); *State v. Teague*, 215 Or 609, 336 P2d 338 (1959) (severe sentence not so excessive as to violate Article I, section 16); *Cannon v. Gladden*, 203 Or 629, 281 P2d 233 (1955) (penalty so disproportionate to the offense as to shock the moral sense of reasonable people as to what is right and proper); *State v. Coffman*, 171 Or 166, 136 P2d 687 (1943) (notwithstanding jury's recommendation of leniency, lengthy sentence not cruel and unusual); *State v. Smith*, 128 Or 515, 273 P 323 (1929) (Habitual Criminal Act does not violate Article

adhered to a hands-off policy in regard to prisoners' complaints about conditions of confinement or deprivation of rights by state and local prison officials. Two primary reasons were advanced for this policy: (1) deference to prison officials, the supposed experts in penology, and (2) principles of federalism, which vested primary responsibility for the administration of state prisons in state officials. To this day, federal courts continue to adhere to a policy of deference to a large extent. *See* Linda G. Hemphill, *Challenging Conditions of Confinement: A State Constitutional Approach,* 20 Willamette L Rev 409, 413-14 (1984) (explaining federal courts' policy of deference to state prison officials).

Interpretations of the "cruel and unusual punishments" clause and habeas corpus jurisprudence have evolved, however, so that now a prisoner may challenge circumstances that do not reach the severity of "a lingering death" or "barbarity." *See, e.g.,* ORS 34.362 (authorizing challenges on ground of conditions of confinement or deprivation of rights while confined); *Bedell v. Schiedler,* 307 Or 562, 770 P2d 909 (1989) (challenging conditions of confinement); *Penrod / Brown v. Cupp,* 283 Or 21, 581 P2d 934 (1978) (*pre-*ORS 34.362: habeas corpus is available to challenge alleged deprivations of prisoners' rights); *see also* Eric Neisser, *Is There A Doctor In The Joint? The Search For Constitutional Standards For Prison Health Care,* 63 Va L Rev 921, 923-36 (1977) (discussing the evolution of judicial standards for prison health care); Michael A. Millemann, *Protected Inmate Liberties: A Case for Judicial Responsibility,* 53 Or L Rev 29, 50-52 (1974) (recommending that the Eighth Amendment be interpreted to play a central role in the abolition of "intolerable contemporary prison practices").

In *Estelle,* the United States Supreme Court stated that the Eighth Amendment now embodies broad and idealistic concepts of dignity, civilized standards, humanity, and

---

I, section 16); *State v. Butchek,* 121 Or 141, 253 P 367 (1927) (death penalty not cruel and unusual punishment); *Sustar v. County Court of Marion County,* 101 Or 657, 201 P 445 (1921) (sentence did not "shock the moral sense of all reasonable men as to what is right and proper"). The Eighth Amendment, however, forbids punishments grossly disproportionate to the severity of the crime and it imposes substantive limits on what can be made criminal and punished. *Estelle,* 429 US at 103 n 7.

decency, against which we must evaluate penal measures. 429 US at 102.[10]

> "Thus, we have held repugnant to the Eighth Amendment punishments which are incompatible with 'the evolving standards of decency that mark the progress of a maturing society,' * * * or which 'involve the unnecessary and wanton infliction of pain.' " *Id.* at 102-03 (citations omitted).

■ Notwithstanding that evolution, the phrase "cruel and unusual punishments" still connotes a conscious choice on the part of prison officials to inflict punishment on an inmate. *See Black's Law Dictionary*, 1234 (6th ed 1990) (defining "punishments"). The reference in Article I, section 16, to punishments that are "inflicted" also suggests that the punisher must have some level of intent or purpose.

### CASE LAW

In *Bedell*, the plaintiff alleged that the environment in which she was confined subjected her to serious health hazards in violation of the cruel and unusual punishments clause of Article I, section 16. This court stated:

> "Plaintiff's replication alleges sufficient specific facts supporting her claim that the conditions of her confinement violate her constitutional rights. Construed liberally, the replication alleges that the environment in which she is confined unnecessarily subjects her to serious health hazards. *If* prisoners are entitled to reasonable and necessary medical care, it reasonably follows that they also are entitled to an environment that does not unnecessarily subject them to serious health hazards.

> "In this case, we do not decide whether plaintiff's evidence will support her claim for habeas corpus relief. Construing her replication liberally and accepting her unchallenged allegations as true, we conclude that she has established her right to a hearing at which she will have a full and fair opportunity to present her evidence. It is simply too early in the judicial process to dismiss this action which raises a claim that is not wholly unsubstantial." *Bedell*, 307 Or at 570 (emphasis added; footnote omitted).

---

[10] *See* 84 Geo LJ 1465, 1476-84 (1996) (prisoners' rights related to living conditions, medical care, and disciplinary treatment).

In *Bedell* this court did *not* adopt a "reasonably available" standard. First, this court's discussion of a standard in *Bedell* was qualified by the word "[i]f." Second, the reference to "reasonable and necessary medical care" in *Bedell* recognized that prison officials have *some* constitutional duty to provide medical care to inmates, and that that duty is analogous to the duty that was recognized in *Estelle*—to protect inmates from known serious health hazards. *Estelle*, 429 US at 103-04. That reference, however, did not identify a definitive minimum standard of medical care that prison officials must provide inmates under Article I, section 16. In fact, *Bedell* was concerned only with the prison environment, not with medical care *per se*. *Bedell*, 307 Or at 564. *Bedell* was not a rejection of the *Estelle* standard. Rather, it was this court's attempt to follow that standard in a different context. *Bedell* did not even cite Article I, section 16, or *Priest*. Instead, this court cited Article I, section 13 (the prohibition against treatment with "unnecessary rigor"), and *Sterling v. Cupp*, 290 Or 611, 625 P2d 123 (1981), a case decided under Article I, section 13.

As we read it, the Court of Appeals' decision in this case recognizes a more generous substantive standard for obtaining habeas corpus relief in a medical treatment case under the Oregon Constitution than is recognized under the Eighth Amendment after *Estelle*. For nearly 20 years, the Court of Appeals has adhered to its analysis in *Priest*. *Billings*, 133 Or App at 242. Our review of *Priest*, however, indicates that, as was customary at the time, the *Priest* court did not engage in any separate state constitutional analysis before announcing its "reasonably available" standard. *Priest*, 24 Or App at 431. Likewise, the relevant Court of Appeals' decisions after *Priest* have not advanced a principled argument for that standard. Rather, they simply have cited or quoted *Priest*. Moreover, the plaintiff in *Priest* brought his claim under the Eighth Amendment. The holding in *Priest*—that the plaintiff failed to prove that the medical care he had received was inadequate—did not turn on the selection of a standard. Additionally, *Priest* was decided before *Estelle*.[11] Before *Estelle*, the United States Supreme

---

[11] *See* 2 Criminal Law (Oregon CLE 1994) § 27.13 (questioning validity of "reasonably available" standard after *Estelle*).

Court had not articulated a standard under the Eighth Amendment for evaluating medical care claims. *Priest* purported to identify the standard for medical care under the Eighth Amendment and Article I, section 16, and to use the same standard under *both* constitutions.

## HISTORY

We next consider the history of the cruel and unusual punishments clause of Article I, section 16. That clause was modeled after Article I, section 16, of the Indiana Constitution of 1851. *See* W.C. Palmer, *The Sources of the Oregon Constitution*, 5 Or L Rev 200, 201 (1925-26) (Article I, section 16, was taken from Article I, sections 16 and 19, of the Indiana Constitution of 1851). Apparently, the Oregon Constitutional Convention passed the clause without recorded discussion. The only available account of the Constitutional Convention debates of 1857 relies exclusively on newspaper reports. Charles A. Carey, ed., *The Oregon Constitution and Proceedings and Debates of the Constitutional Convention of 1857*, 310 (1926). We find nothing in the history of the "cruel and unusual punishments" clause of Article I, section 16, that suggests that it affords more protection in this context than does the Eighth Amendment.[12]

## OTHER SOURCES

■ Although stressing the importance of expounding principles of state constitutional analysis, this court also

> "has high respect for the opinions of the [United States] Supreme Court, particularly when they provide insight into the origins of provisions common to the state and federal bills of rights rather than only a contemporary 'balance' of pragmatic considerations about which reasonable people may differ over time and among the several states." *Kennedy*, 295 Or at 267.

This court's decision in this case is grounded solely on state constitutional principles. Notwithstanding, we find elements of the Supreme Court's opinion in *Estelle* persuasive in interpreting Article I, section 16, in this context.[13]

---

[12] *See* note 8, above.

[13] "Lest there be any doubt about it, when this court cites federal opinions in interpreting a provision of Oregon law, it does so because it finds the views there

■ In *Estelle*, the plaintiff brought a civil rights action under 42 USC § 1983, claiming that the prison's allegedly inadequate treatment of his back injury constituted cruel and unusual punishment. The district court dismissed the plaintiff's complaint at the pleading stage. The United States Supreme Court held that the government has an obligation to provide medical care for those whom it is punishing by incarceration and that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' * * * proscribed by the Eighth Amendment." *Estelle*, 429 US at 104.

> "Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Id.* at 105.

*See Delker v. Maass*, 843 F Supp 1390 (D Or 1994) (applying "deliberate indifference" standard in context of Oregon prisoner's federal civil rights action against chief medical officer of state penitentiary). An accidental or inadvertent failure to provide adequate medical care would not constitute an "unnecessary and wanton infliction of pain." *Estelle*, 429 US at 105. "It is only [deliberate] indifference that can offend 'evolving standards of decency' in violation of Eighth Amendment." *Id.* at 106. *See Wilson v. Seiter*, 501 US 294, 111 S Ct 2321, 115 L Ed 2d 271 (1991) (mere negligence does not satisfy "deliberate indifference" standard).[14]

The Supreme Court held that Estelle's complaint did not allege an Eighth Amendment violation. *Estelle*, 429 US at 107. At most, he had stated a claim for medical malpractice that could be pursued in state court under the state tort claims act.

---

expressed persuasive, not because it considers itself bound to do so by its understanding of federal doctrines." *State v. Kennedy*, 295 Or 260, 267, 666 P2d 1316 (1983).

There is precedent for interpreting Article I, section 16, and the Eighth Amendment similarly. In a different context—proportionality in a capital case—this court relied on Eighth Amendment analysis in interpreting Article I, section 16. *See State v. Rogers*, 313 Or 356, 379-80, 836 P2d 1308 (1992), *cert den* 113 S Ct 1420 (1993) (Article I, section 16, standard for determining whether punishment is cruel and unusual is the same as Eighth Amendment standard).

[14] Recklessness with respect to the standard of care may constitute "deliberate indifference" to a prisoner's medical needs under the Eighth Amendment. *See* 84 Geo LJ at 1480-82 (citing cases).

■ To state a cognizable Eighth Amendment claim under *Estelle*, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106. Such a claim involves both an objective and a subjective element. *See Delker*, 843 F Supp at 1398 (interpreting *Estelle*). The objective element requires proof that the prisoner has a serious medical need that has not been treated in a timely and proper manner. The subjective element requires proof of "deliberate indifference" to the prisoner's serious medical need on the part of prison officials. *Estelle*, 429 US at 106.[15]

■ After considering the analysis in *Estelle* and its progeny, and having given due consideration to the briefs and arguments of counsel in this case, we conclude that the Court of Appeals' "reasonably available" standard first announced in *Priest* employs the wrong standard for habeas corpus medical care claims under Article I, section 16. First, the objective element, the *seriousness* of the plaintiff's medical condition, is absent from the Court of Appeals' test. By posing only the question of what treatment is reasonably available for a given condition, that standard may give constitutional significance to minor complaints about prisoners' medical care. That matters, because Article I, section 16, is only meant to prevent "cruel and unusual" punishments, not merely annoying, negligent or unpleasant punishments. The words and history of the clause set a high objective standard. Second, the subjective element, *deliberate indifference* on the part of prison officials, also is absent from the Court of Appeals' test. As noted, that subjective element derives from the concepts of "inflicting" and "punishment." Again, even if conduct (or a failure to act) causes pain or suffering, Article I, section 16, forbids it only if it is a form of punishment that is "inflicted," that is to say—it is not the result of a happenstance or even negligence. *Estelle*, 429 US at 105-06.

■ We hold that the Eighth Amendment's "deliberate indifference to serious medical needs" standard is the appropriate standard under Article I, section 16. To state a cognizable claim for habeas corpus relief under Article I, section

---

[15] The parties have not cited any state case from outside Oregon that applies a standard different from *Estelle* in the context of the alleged denial of necessary medical care, nor are we aware of any.

16, a prisoner must allege that the prisoner has a serious medical need that has not been treated in a timely and proper manner and that prison officials have been deliberately indifferent to the prisoner's serious medical needs. *Id.*, at 106.

 Deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain, whether the indifference is manifested by prison doctors in their response to a prisoner's serious medical needs or by prison guards in intentionally denying or delaying access to medical care, or in intentionally interfering with prescribed treatment. *Id.* at 104-05. The "deliberate indifference" standard is not intended to insulate prison staff from judicial scrutiny of decisions made in the course of diagnosing and treating prison inmates. But, for the reasons explained above, it is true that an inmate ultimately will fail to prove an Article I, section 16, violation if the inmate establishes nothing more than an honest difference of medical opinion about correct diagnosis and necessary treatment. *See Estelle*, 429 US at 105-06 (so stating with regard to Eighth Amendment); *Sanchez v. Vild*, 891 F2d 240, 242 (9th Cir 1989). The inmate plaintiff also must establish the existence of a "serious" medical condition. A medical condition is serious when, if untreated, it would have a significant adverse effect on an inmate's daily activities, resulting in substantial and recurring pain or discomfort, or would create a significant risk of permanent disability or death. *See McGuckin v. Smith*, 974 F2d 1050, 1059-60 (9th Cir 1992) ("A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.' "); *Delker*, 843 F Supp at 1398-99 (the presence of a medical condition that significantly affects an individual's daily activities, or the existence of chronic and substantial pain are indicators that a prisoner has a "serious" need for medical treatment).[16]

██ ██ Having articulated the correct standard under Article I, section 16, we proceed to examine plaintiff's petition to determine whether he has stated sufficient facts to state a

---

[16] The words "elective surgery" are not a talisman insulating prison officials from the reach of the Eighth Amendment. Each case must be evaluated on its own merits. *Delker v. Maass*, 843 F Supp 1390, 1400 (D Or 1994).

claim, ORS 34.680, and to avoid the denial of his petition as being "meritless," ORS 34.370(2)(b)(A). In doing so, we take the allegations of the petition as true and give plaintiff the benefit of all favorable inferences that may be drawn therefrom. ORS 34.370(7); *Bedell*, 307 Or at 566 (*pre*-ORS 34.370(7)).

Plaintiff's petition alleges that SRCI's doctor told him that he has high arches, that the shoes provided by SRCI have no arch supports, and that without arch supports "any walking causes [plaintiff] pain to the point where he cannot walk." His petition further alleges that arch supports are available from SRCI's commissary, but that he is indigent and, therefore, unable to purchase them. Last, he alleges that SRCI knows that he is indigent and, yet, will not provide him with arch supports. Thus, plaintiff asserts, defendant is denying him "proper" medical care.[17]

We conclude that plaintiff's petition states a claim of deliberate indifference by prison officials to his serious medical needs, sufficient to defeat defendant's motion to dismiss under ORS 34.680. Accordingly, we hold that the trial court erred in dismissing plaintiff's petition.

We do not decide, of course, whether the evidence eventually will support a claim for habeas corpus relief.[18] As in *Bedell*, we hold only that this petition should not have been denied on the basis of the pleadings alone.

The decision of the Court of Appeals is affirmed on different grounds. The judgment of the circuit court is

---

[17] As noted, the Court of Appeals held that, at this stage of the proceedings, the trial court should not have considered the affidavit and medical records accompanying defendant's response. ORS 34.680; 34.370(2). Defendant did not seek review of that holding. Accordingly, we have not considered those materials on review.

It also bears noting that defendant's response does not deny that plaintiff's condition is a serious and ongoing medical problem, nor does it allege affirmatively that arch supports are not medically necessary, or that plaintiff is not indigent. The trial court's record, however, shows that plaintiff was permitted to proceed *In Forma Pauperis*, that his fees and costs were waived, and that he had court-appointed counsel. Plaintiff also had court-appointed counsel on appeal and on review.

[18] The plaintiff has the burden of proving his or her case by a preponderance of the evidence. *Smallman v. Gladden*, 206 Or 262, 269, 291 P2d 749 (1956), *overruled on other grounds by State v. Collis*, 243 Or 222, 413 P2d 53 (1966).

vacated, and the case is remanded to the circuit court for further proceedings.

**FADELEY, J.,** specially concurring.

I concur in the result of remand to develop the actual issues in this habeas corpus, conditions of confinement case.

The petitioner alleged that the prison authorities would not provide necessary prosthetics (in his case, arch supports) by paying for them "even where" a petitioner is unable to pay. That allegation is less than a direct claim that this petitioner is unable to pay. The trial judge, in a show cause proceeding[1] on the petition for writ of habeas corpus, found as fact:

> "Plaintiff chooses not to use any of the funds placed in his account for arch supports."

I disagree with the Court of Appeals' holding that the affidavits, medical records, and other materials were impermissibly considered by the judge in a show cause proceeding. He was justified in considering them, in my view. Thus, his findings must be considered.

The most likely meaning of the trial court's findings, mentioning funds placed in petitioner's account, is that petitioner has funds in his prison account with which to purchase the medically necessary arch supports that are for sale at the prison store, but that meaning is not free from doubt, so I concur in the remand. On this state of ambiguity, however, it seems to me premature to issue an advisory opinion about what constitutional standard will apply if medical indigency is the fact.

Assuming medical indigency is alleged, the lead opinion holds that the petitioner's allegations are sufficient to meet a standard of "deliberate indifference" and, for that reason, that the judgment of dismissal should be vacated. I would agree that they are sufficient to meet that standard. However, assuming medical indigency is present, I would

---

[1] ORS 34.370, as amended by Or Laws 1995, ch 294, § 1 and Or Laws 1995, ch 657, § 8, provides the show cause process.

hold that the allegations meet a "medically necessary" standard and that for that reason dismissal was error requiring reversal and remand.

The lead opinion declares that the terms "deliberate indifference" and "unnecessary and wanton infliction of pain" are synonymous and that those terms represent the minimum constitutional standards for condition of confinement cases in Oregon. I do not agree that either of those different descriptions is an accurate description of the "evolving standards of decency," existing in Oregon today, regarding provision of necessary medical care to those who are prevented from obtaining such care for themselves because of incarceration.

Instead, I think that providing a medically necessary and reasonably available prosthetic appliance to a medically indigent inmate is dictated by this state's standards of decency when, as here, the appliance permits the prisoner to walk and, therefore, to work. I would hold that a petition for a writ alleging denial of a prosthetic appliance should be tested under the "medically necessary and reasonably available" standard. That is the Oregon standard of decency for provision of medical care to those who are prevented from obtaining the care by reason of incarceration, in my opinion.

ORS 423.020 provides in part:

"(1) The Department of Corrections is created. The department shall:

"* * * * *

"(d) Provide adequate food, clothing, health and medical care, sanitation and security for persons confined[.]"

OAR 291-124-085 provides:

"(2) Prosthetics and Self Care Items:

"(a) Inmates shall be required to pay for prostheses and/or other devices which become the personal property of the inmate;

"* * * * *

"(d) An inmate shall not be denied prostheses and/or other devices which are medically necessary because of lack of funds[.]"

OAR 291-124-050 provides:

"(1) The provision of medical/dental treatment during incarceration is limited to medically necessary interventions that correct:

"* * * * *

"(b) A functional deficit substantial enough to jeopardize the inmate's current health status or safety during incarceration."

Reliance on *Estelle v. Gamble*, 429 US 97, 97 S Ct 285, 50 L Ed 2d 251, *reh'g den* 429 US 1066 (1976), is misplaced. First, *Estelle* is essentially a tort case. In *Estelle*, the Court characterized the part of the action brought against a prison's chief medical officer as a "malpractice" case.

In *Estelle*, the prisoner refused to work because of pain related to a back injury. He received medical attention. Also, the prison guards provided pain medicine, including refills. He later was diagnosed also to have a heart condition. No X-ray was taken. A medical doctor obtained by the prison diagnosed and prescribed medication for the heart condition and, when asked, extended that prescription. Later, while the prisoner was in "administrative segregation," guards refused on three separate days either to obtain a doctor or to take the prisoner to a doctor based on his oral complaints of pain and blanking out. The foregoing facts were held by the Supreme Court to be insufficient to establish a civil tort claim under 42 USC § 1983 based on an Eighth Amendment standard for conduct of prison officials. Describing the basis for its ruling, the *Estelle* majority held that negligence in providing medical treatment is insufficient to create section 1983 tort liability. The Court held that deliberate indifference to the inmate's medical condition, not merely malpractice in treating it, would be required to support civil tort liability for deprivation of the constitutional right in the form of a failure to provide medical treatment.

Commenting on *Estelle*, Professor Tribe states:

"Surely Justice Stevens was right to insist in *Estelle v. Gamble,* for example, that '[w]hether the conditions in Andersonville were the product of design, negligence, or mere poverty, they were cruel and inhuman,'[36] and to conclude that governmental indifference to a prisoner's medical needs violates the eighth and fourteenth amendments.[37]

---

"[36] 429 U.S. 97, 116-17 (1976) (dissenting opinion).

"[37] The majority held only that the inmate's complaint was insufficient to suggest such indifference by prison personnel to the inmate's medical condition as to constitute cruel and unusual punishment. Although the majority indicated that 'deliberate indifference to serious medical needs of prisoners,' id. at 106, would violate the eighth amendment, and expressed no view on the constitutional status of inattention that could not be characterized as 'deliberate,' Justice Stevens disagreed both with the majority's cramped reading of the complaint and with the majority's apparent concern with 'the subjective motivation of the defendant as a criterion for determining whether cruel and unusual punishment has been inflicted.' Id. at 116. See also Whitley v. Albers, 475 U.S. 312 (1986), discussed in § 10-7, note 10, supra." Laurence H. Tribe, *American Constitutional Law,* 1335 (2d ed 1988) (footnotes to the quoted text are also Professor Tribe's).

The United States Supreme Court has not limited its application of the Eighth Amendment to cases in which physical pain or torture are inflicted. In *Trop v. Dulles,* 356 US 86, 78 S Ct 590, 2 L Ed 2d 630, 642-43 (1958), the Supreme Court held that, because of the Eighth Amendment the government could not "denationalize" a person as a punishment. And, near the turn of this century, in *Weems v. United States,* 217 US 349, 30 S Ct 544, 54 L Ed 793 (1910), that Court held that use of an ankle-to-wrist chain plus deprivation of civil rights for life violated the Eighth Amendment. Those cases are cited favorably by the *Estelle* Court, yet those cases are not ones of deliberate indifference to physical pain, the "standard" for which the lead opinion cites *Estelle.*

However, and in any event, the case before us is *habeas corpus* concerning conditions of confinement. In such

a habeas in Oregon we must look to *Bedell*,[2] not *Estelle*. In the present case there is no failure to diagnose or prescribe treatment. Petitioner's disabling condition was diagnosed, and medically necessary treatment was authorized and was reasonably available inside the walls. In the present case there is no failure to diagnose or prescribe treatment. The only question left is who would or could pay for the medically necessary item.

---

[2] *Bedell v. Schiedler*, 307 Or 562, 770 P2d 909 (1989), a condition of confinement case, held that subjecting an incarcerated nonsmoker to cigarette smoke in her living space could justify habeas conditions of confinement relief, preventing dismissal without hearing.