Submitted April 23, affirmed July 31, petition for review denied November 27, 2013 (354 Or 491)

## ROBERT WOODROFFE,
*Plaintiff-Appellant,*

*v.*

## Mark NOOTH,
Superintendent,
Snake River Correctional Institution,
*Defendant-Respondent.*

Malheur County Circuit Court
10027899H; A146918

308 P3d 225

Erin Galli and Chilton & Galli, LLC, filed the brief for appellant.

John R. Kroger, Attorney General, Anna M. Joyce, Solicitor General, and Stephanie L. Striffler, Senior Assistant Attorney General, filed the brief for respondent.

Before Haselton, Chief Judge, and Brewer, Judge pro tempore.

HASELTON, C. J.

## HASELTON, C. J.

Plaintiff, an inmate at Snake River Correctional Institution (SRCI), petitioned for a writ of habeas corpus, alleging that defendant has denied him constitutionally adequate medical treatment for his various physical and psychological conditions, including a fractured coccyx, knee pain, migraine headaches, and attention deficit hyperactivity disorder (ADHD). Or Const, Art I, § 16; US Const, Amend VIII.[1] After the writ issued, defendant moved to dismiss, ORS 34.680(1), arguing, *inter alia*, that no objectively reasonable juror could find that defendant had denied plaintiff constitutionally adequate medical diagnosis or treatment. The trial court granted defendant's motion to dismiss and entered a general judgment of dismissal. On appeal, plaintiff contends that he presented sufficient evidence to establish disputed issues of material fact as to whether defendant was deliberately indifferent to his serious medical needs. We conclude that the trial court did not err in dismissing the writ. Accordingly, we affirm.

A motion to dismiss a writ of habeas corpus is "the functional equivalent of a motion for summary judgment," *McClintock v. Schiedler*, 123 Or App 334, 336, 859 P2d 580 (1993); thus, in reviewing a judgment dismissing a writ of habeas corpus, we will affirm if the record, viewed in the light most favorable to the plaintiff, presents no genuine issue of material fact and the defendant is entitled to prevail as a matter of law. *See* ORCP 47 C ("No genuine issue as to a material fact exists if, based upon the record before the court viewed in a manner most favorable to the adverse party, no objectively reasonable juror could return a verdict for the adverse party on the matter that is the subject of the motion for summary judgment."). In our assessment of the record, the plaintiff's replication is not the equivalent of "an affidavit or other evidence that is sufficient to overcome a

---

[1] Article I, section 16, of the Oregon Constitution, provides, in pertinent part, that "[c]ruel and unusual punishments shall not be inflicted, but all penalties shall be proportioned to the offense."

The Eighth Amendment to the United States Constitution, made applicable to the states by the Fourteenth Amendment, provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

motion to dismiss for failure to establish a claim for *habeas corpus* relief." *McClintock*, 123 Or App at 338.

"To state a cognizable claim for habeas corpus relief under Article I, section 16, a prisoner must allege that the prisoner has a serious medical need that has not been treated in a timely and proper manner and that prison officials have been deliberately indifferent to the prisoner's serious medical needs." *Billings v. Gates*, 323 Or 167, 180-81, 916 P2d 291 (1996) (adopting the standard under the Eighth Amendment enunciated in *Estelle v. Gamble*, 429 US 97, 106, 97 S Ct 285, 50 L Ed 2d 251 (1976)). To establish deliberate indifference, a plaintiff must demonstrate something "more than an honest difference of medical opinion about correct diagnosis and necessary treatment." *Billings*, 323 Or at181.

For the purposes of this opinion, we state the facts from the record in the light most favorable to plaintiff. Plaintiff suffers from a fractured coccyx, knee pain, migraine headaches, and ADHD. At SRCI, Oregon Department of Corrections doctors Gulick and Elliott-Blakeslee have treated his physical ailments and nurse practitioner Kramer has treated his ADHD. Certain medical decisions for inmates at SRCI are reviewed by a committee that oversees medical treatment, the Therapeutic Level of Care Committee (TLC).

Plaintiff suffers from pelvic and low back pain related to his fractured coccyx. Plaintiff also suffers from knee pain caused by a degenerative condition, which may be due to his weight. Those conditions and the associated pain prevent plaintiff from exercising.

On July 24, 2009, Elliott-Blakeslee examined plaintiff and ordered x-rays, which showed a possible nondisplaced fracture of the distal coccyx, and bone scans were considered. An x-ray of plaintiff's knee showed no evidence of fracture or of "other significant boney abnormality." On December 21, 2009, Elliott-Blakeslee again examined plaintiff, who complained of low back and coccyx pain, despite receiving pain medication, Indocin, three times a day. Plaintiff requested "'something stronger' than ibuprofen" for his pain. He also requested a surgical consultation for his coccyx.

Elliott-Blakeslee referred those requests to the TLC, which denied both requests.

On January 19, 2010, plaintiff again met with Elliott-Blakeslee for evaluation of his coccyx pain. Subsequent x-rays showed a slight displacement, which may have been the cause of plaintiff's pain. Elliott-Blakeslee again requested that the TLC review plaintiff's requests for pain medication and a surgical consultation—and the TLC rejected those requests, after determining that the pain medication was not medically indicated and that there is no accepted surgery for coccyx pain. Instead, the TLC approved a donut cushion for plaintiff's sitting comfort.

On March 9, Gulick examined plaintiff for knee pain and, consequently, referred to the TLC a request for a bone scan for plaintiff. Presumably that request was approved because, on April 15, plaintiff was given a whole-body bone scan examination. That scan indicated that plaintiff's spine "looked normal," but that he might have a healing fracture in his pelvis. The scan also showed that plaintiff's knees may be under stress and degenerating.

On May 11, plaintiff refused to see Gulick to review the bone scan and to consider treatment options. In an affidavit dated the next day, Gulick averred, "When [plaintiff] agrees to follow-up with the proposed treatment option, I'll refer him back to TLC."

Plaintiff next met with Gulick on August 17 regarding his knee pain and complained that he could not "get to standing or walk long." Plaintiff also complained that the donut did not help his coccyx pain but reported that, at that point, his knee pain was worse than his coccyx pain. That same day, Gulick increased plaintiff's Indocin prescription, prescribed Tylenol, and again referred plaintiff's coccyx pain complaints to the TLC for review. The record does not disclose the outcome of that review.

As noted, plaintiff also suffers from migraine headaches, which occur approximately two or three times a week and disrupt his sleep. For some period of time after his incarceration at SRCI, plaintiff's migraines were treated with Cafergot, which helped both to prevent onset and ease pain.

That treatment changed after the settlement of a federal lawsuit that plaintiff filed in 2008 against 40 defendants, including Gulick, alleging medical mistreatment. Thereafter, in August 2009, while plaintiff was in a segregation unit, Gulick discontinued Cafergot in a medical order, where he wrote, "[Discontinue] Cafergot unless migraines severe per policy in seg[regation] per Dr. Shelton." In September, plaintiff reported to a nurse that he was having a migraine and that "nothing helps except [for] Cafergot." In October, Gulick approved Imitrex for plaintiff's headaches in "the standard amount *** with a dosage identical to all other inmates." Imitrex lessens the pain plaintiff experiences from the migraines, but, unlike Cafergot, it does not help to prevent them. In February 2010, plaintiff reported to a nurse, "I had a migraine ***, but not now. I used to have Cafergot and it really worked. Imitrex helped some."

Gulick has adjusted plaintiff's dosage of Imitrex. After determining that, as of July 30, 2010, the amount of Imitrex that plaintiff had been prescribed was inadequate to treat the frequency of his migraines, Gulick, on August 17, increased plaintiff's Imitrex prescription and prescribed Norvasc for a "prophylactic trial." There is no evidence in the record of the effect of that change in medication.

As noted, plaintiff also has ADHD. Plaintiff's ADHD was formerly managed with Ritalin; however, after the Oregon Department of Corrections discontinued the use of Ritalin throughout the corrections system, nurse practitioner Kramer prescribed plaintiff Wellbutrin and Benadryl to help manage his ADHD. On December 11, 2009, a corrections officer reportedly found crushed, "cheeked" medications in plaintiff's cell.[2] Based on that incident, plaintiff's ADHD medications were discontinued because, according to nurse Hodge, who manages medical services at SRCI,

"[w]hen an inmate abuses medication[, including discovery of medline medication on an inmate's person or in his property after medline], the provider will evaluate the inmate's need for that specific medication. If abuse is found, the initial

[2] Plaintiff contends that the powdery substance found in his cell was not drugs but crushed pastel crayons. For reasons that will become clear, that disputed fact is not material to our analysis.

prescriber will generally make a decision and visit with the inmate to let the inmate know his medication is being discontinued. The provider will continue to observe the inmate therapeutically without the medication. Providers can make a decision to discontinue medication, medline all medication, or ask the nurse to crush all medication prior to administering them. There are times when medication is discontinued and restarted again."

Pursuant to that policy, Kramer discontinued plaintiff's ADHD medication.

Kramer subsequently scheduled an appointment to assess plaintiff's reaction to being unmedicated. However, plaintiff refused to meet with Kramer.[3] Consequently, there is no medical evidence in the record that demonstrates plaintiff's response to the change in his ADHD treatment. In an affidavit, plaintiff avers that "I felt that the medications that were discontinued, specifically * * * Ritalin, and Wellbutrin, were helpful to my conditions. Though I felt that Ritalin was better for treating my ADHD, I did feel that Wellbutrin helped." Plaintiff did not elaborate on the relative efficacy of Ritalin and Wellbutrin in treating his ADHD, nor did plaintiff provide details about how his untreated ADHD affects his daily life.

We turn to the parties' arguments. In doing so, we note that defendant conceded at trial that there may be disputed factual issues as to whether plaintiff's conditions described above constitute "serious medical conditions." Accordingly, the only issue before us is whether plaintiff presented sufficient evidence to establish a disputed issue of material fact with respect to defendant's alleged deliberate indifference to his medical conditions. As amplified below, we conclude that the record—even when viewed in the light most favorable to plaintiff—does not present a triable issue of material fact that would preclude summary judgment. We discuss, in turn, each of plaintiff's conditions and defendant's treatment of those conditions.

---

[3] Plaintiff was a "no show" or refused "sick call" and missed scheduled medical appointments on 12 occasions between June 2009 and May 2010. Those missed appointments occurred on June 16, 2009; June 23, 2009; September 12, 2009; September 18, 2009; December 28, 2009; December 31, 2009; January 6, 2010; February 16, 2010; March 1, 2010; March 4, 2010; April 27, 2010; and May 11, 2010.

On appeal, plaintiff asserts that he established that defendant was deliberately indifferent in denying treatment for his fractured coccyx. Specifically, plaintiff contends that Elliott-Blakeslee examined him and recommended pain medication and a surgical consultation, but those recommendations were denied by the TLC. In his *replication*, plaintiff asserted, "Plaintiff has been told by Dr. Gulick that the coccyx surgery is too expensive and therefore SRCI will not offer it to Plaintiff." According to plaintiff, the TLC denied the surgical consultation request "based at least in part on the cost associated with the consultation." By implication, plaintiff asserts that the propriety of the reason for that denial creates a triable issue of fact. As we noted earlier, a replication is not evidence for purposes of opposing a motion to dismiss for failure to establish a claim for habeas corpus relief. *See McClintock*, 123 Or App at 337-38. Accordingly, even assuming (as we must in this review posture) that plaintiff's coccyx pain is a serious medical condition, and, even assuming, without deciding, that, in some circumstances, corrections officers' application of a cost/benefit analysis in withholding or denying certain medical treatment could constitute deliberate indifference, plaintiff did not provide any evidence that the TLC's denial of his request for a surgical consultation was, in fact, predicated on the cost of treatment, much less some constitutionally impermissible cost-benefit analysis.[4]

Plaintiff next asserts that he established triable issues of fact with respect to a change in his pain medication for knee pain and migraine headaches. With respect to his migraines, plaintiff contends that the medication that was effective at treating his pain—*viz.*, Cafergot—was discontinued because of Gulick's bias against him based on the federal lawsuit that plaintiff had filed. In an affidavit, Gulick disclaimed any bias or retaliatory purpose.

We recognize that evidence of a retaliatory motive "is rarely direct and often, necessarily, circumstantial and

---

[4] We note that the record does not establish that *Elliott-Blakeslee* recommended specific pain medication and a surgical consultation as an appropriate course of medical treatment for plaintiff. Rather, the record indicates only that Elliott-Blakeslee submitted *plaintiff's* requests for stronger pain medication and a surgical consultation, and that the TLC denied *plaintiff's* requests.

inferential." *Herbert v. Altimeter, Inc.*, 230 Or App 715, 725, 218 P3d 542 (2009) (internal quotation marks omitted). Here, a retaliatory motive might permissibly be inferred from the undisputed facts that plaintiff filed a lawsuit against Gulick and that Gulick subsequently changed defendant's medication. However, even if such a retaliatory motive could be inferred as of the time that Gulick discontinued plaintiff's treatment with Cafergot in August 2009, that is not, by itself, sufficient to create a triable issue of material fact as to actionable deliberate indifference for purposes of habeas corpus relief.

That is so because, given the nature of the remedy sought in habeas—*viz.*, injunctive relief (and not damages)—the proper temporal benchmark for assessing deliberate indifference is *at the time that the habeas claim is adjudicated. See* ORS 34.362(2) ("If the person * * * challenges the conditions of confinement or complains of a deprivation of rights while confined, the petition shall * * * [s]tate facts in support of a claim that the person is deprived of a constitutional right that requires immediate judicial attention *and for which no other timely remedy is practicably available to the plaintiff.*" (Emphasis added.)). Thus, *past* deliberate indifference is insufficient to support habeas relief; rather, that indifference and derivative conduct must be *continuing* as of the time the petition is adjudicated.

Here, at the time that plaintiff's habeas petition was adjudicated, the uncontroverted evidence was that Gulick had increased plaintiff's Imitrex in response to plaintiff's frequent migraine pain complaints. In addition, Gulick prescribed a new drug aimed at preventing plaintiff's recurring migraines. Similarly, Gulick increased pain medications for plaintiff's knee pain. Although plaintiff may not have received the drugs that he would prefer, the uncontroverted evidence in the record establishes that defendant has been responsive to plaintiff's migraine headaches and knee pain. Plaintiff has not contended, nor proffered *prima facie* evidence, that the course of treatment as of the time the court adjudicated the petition was improperly motivated or otherwise constitutionally deficient. Accordingly, the court did not err in its disposition as to those allegations.

Finally, plaintiff contends that he established triable issues of fact with respect to a change, and subsequent discontinuance, of his medications for ADHD. Even assuming that plaintiff's ADHD is a serious medical condition, and assuming that a change in treatment from prescribing and providing a relatively effective drug to prescribing and providing a less effective drug (or discontinuing medication altogether) could evidence deliberate indifference, the undisputed fact that plaintiff refused to communicate with Kramer—the person that could treat his ADHD—inexorably leads us to the same conclusion that we reached with respect to plaintiff's knee pain and migraine headaches. That is, given that plaintiff did not inform Kramer or any other SRCI treatment provider that the substituted and discontinued medication was, in fact, materially less efficacious with respect to his condition, much less cooperate in any process to remedy any purported deficiency, no reasonable juror could determine that defendant was deliberately indifferent to plaintiff's ADHD. Accordingly, we conclude that plaintiff failed to establish a genuine issue of material fact with respect to his assertion that defendant has been deliberately indifferent in treating his ADHD.

The trial court did not err in dismissing plaintiff's writ of habeas corpus.

Affirmed.